USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/05/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ABA REFINERY CORP., ALEX GOLD
REFINERY CORP., GOLD BAR REFINERY
CORP., GOLDEX REFINERY CORP., MONSTER
REFINERY CORP., RUDY ENTERPRISES OF
AMERICA CORP., VIKTOR GOLD
ENTERPRISES OF NY CORP.,

         Plaintiffs/
         Counterclaim
         Defendants,

1:15-cv-8731-GHW

MEMORANDUM
OPINION & ORDER

    -against-

REPUBLIC METALS REFINING
CORPORATION,

         Defendant/
         Counterclaim
         Plaintiff,

    and

REPUBLIC METALS CORPORATION,

         Counterclaim
         Plaintiff.
------------------------------------------------------------------X

## I.  INTRODUCTION

Plaintiffs, a group of companies owned and operated by brothers Boris Yakutilov and Artur Yakutelov, are in the business of purchasing scrap metal and reselling it to refining corporations like Defendant. Over a number of years, Plaintiffs and Defendant engaged in almost daily transactions for the sale of gold. Unfortunately, the parties' relationship soured. Two years ago—nearly half a decade after their business relationship fell apart—Plaintiffs sued Defendant, claiming that it failed to settle on a price and finalize payment on dozens of prior deliveries of gold by Plaintiffs. Defendant and its parent company counter-sued, alleging that Plaintiffs promised but failed to deliver gold that they orally agreed to sell at fixed prices on sixty-five occasions in 2009 and 2010.

They claim over $50 million in damages as a result of those breaches. The counterclaims are barred by New York's statute of frauds. Because there is no signed writing between the parties, and there is no writing that satisfies the merchant's exception to the statute of frauds with respect to the oral agreements that are the subject of the counterclaims, the counterclaims cannot survive. As a result, Plaintiffs' motion for summary judgment on Counterclaim Plaintiffs' claims is GRANTED, and Counterclaim Plaintiffs' motion for summary judgment on those claims is DENIED.

## II.  BACKGROUND

Plaintiff-Counterclaim Defendants ABA Refinery Corp., Alex Gold Refinery Corp., Gold Bar Refinery Corp., Goldex Refinery Corp., Monster Refinery Corp., Rudy Enterprises of America Corp., and Viktor Gold Enterprises of NY Corp. (together, "Plaintiffs" or the "Viktor Entities") purchase and re-sell scrap metal. Dkt. No. 54, Pls.' Resp. to Def.'s Local Rule 56.1 Statement ("Pls.' 56.1") ¶ 6. Defendant-Counterclaim Plaintiff Republic Metals Refining Corporation ("RMRC") purchases scrap metal from sellers like Plaintiffs. Pls.' 56.1 ¶ 3. Counterclaim Plaintiff Republic Metals Corporation ("RMC," together with RMRC, "Counterclaim Plaintiffs" or the "Republic Entities"), the parent company of RMRC, purchases, refines, and sells precious metals. Pls.' 56.1 ¶ 1.

The Republic Entities' counterclaim alleges that RMRC and the Viktor Entities entered into a series of oral agreements for the sale of gold over the course of several years. In their answer to Counterclaim Plaintiffs' counterclaims, the Viktor Entities admitted the following:

> In 2009 and 2010, the Viktor Entities entered a series of sales agreements with RMRC. In each instance, a representative of the Viktor Entities, typically one of the Yakutilov brothers, called RMRC. The Viktor Entities typically spoke with RMRC employees Steven Warbet or Mabel Accurso. During the call, the Viktor Entities offered to sell RMRC a specific volume of gold, measured in ounces. RMRC offered to purchase the gold at a specific price. The Viktor Entities then agreed to sell the gold to RMRC at that specific price.

2

Dkt. No. 14, Plaintiffs' Answer and Affirmative Defenses to Counterclaims, ¶ 25.[1]

On the same day as the call from the Viktor Entities, RMRC and its parent company RMC "sold forward" the promised quantity of gold. Pls.' 56.1 ¶ 11. Selling forward, a "common practice in the industry for companies purchasing precious metals," allowed the Republic Entities to hedge their transactions with the Viktor Entities by selling the quantity of gold that it expected RMRC would receive from Plaintiffs to third-party purchasers. Dkt. No. 53, Def.'s Resp. to Pls.' Local Rule 56.1 Statement ("Def.'s 56.1") ¶¶ 21-22. This process began when, following RMRC's call with the Viktor Entities, an RMRC employee called an RMC employee to inform RMC of the expected delivery of gold. Pls.' 56.1 ¶ 17. RMC would then create a purchase contract, called a "fix ticket," memorializing the gold it expected to receive from its subsidiary RMRC. Pls.' 56.1 ¶ 18. In addition, RMRC employee Mabel Accurso would record the transaction in a "trading ledger," which she maintained and kept internally for RMRC's records. *See, e.g.*, Pls.' 56.1 ¶ 41.[2] RMC would then enter into binding agreements with third-party purchasers to sell to them the quantity of gold it expected RMRC would receive from Plaintiffs. Pls.' 56.1 at ¶ 23.

The Republic Entities assert that on sixty-five occasions in 2009 and 2010, Plaintiffs called RMRC, promised to deliver a certain quantity of gold, and failed to deliver gold against those promises. *See generally* Dkt. No. 7, Answer to Compl. and Counterclaims. The Republic Entities

---

[1] Plaintiffs dispute the formation of these agreements. *See* Pls.' 56.1 ¶ 14. However, this admission constitutes a "formal judicial admission" that binds Plaintiffs to that admitted fact throughout the course of the litigation. *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528 (2d Cir. 1985); *Gibbs ex rel. Estate of Gibbs v. CIGNA Corp.,* 440 F.3d 571, 578 (2d Cir. 2006) ("Facts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout th[e] litigation."). "Plaintiffs cannot survive a summary judgment motion by contradicting their own pleadings in an effort to raise a genuine issue of fact." *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99-cv-10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004). As it happens, the Court does not reach the issue of whether the oral agreements actually existed; therefore, this dispute is not material to the resolution of these motions for summary judgment.

[2] Plaintiffs object to this statement of fact generally, and repeatedly assert that "Ms. Accurso did not record an entry from any of the Plaintiffs' entities for [the specific] number of ounces or prices" enumerated for each alleged promise to deliver in the Defendant's Rule 56.1 Statement. *See, e.g.*, Pls.' 56.1 ¶ 41. This dispute is immaterial to the resolution of the motions for summary judgment.

contend that these failures constituted breaches of the parties' oral contracts, and also assert that both RMRC and RMC relied to their detriment upon the Viktor Entities' promises to deliver gold in selling forward the promised deliveries. For each promised delivery that never arrived, the Republic Entities claim, they were forced to purchase gold in order to cover their contracts with third-party purchasers. The Republic Entities assert that this cover price was much higher than the price they would have paid if the Viktor Entities had delivered the promised gold, and that it cost them approximately $50 million to make up their lost positions as a result of the Plaintiffs' failure to deliver. Pls.' 56.1 ¶ 185-87.

Recognizing that these oral agreements might be subject to the statute of frauds, Counterclaim Plaintiffs point to various documents as writings that they claim satisfy the requirements of that statute. *See generally* Pls.' 56.1 ¶¶ 36-169. In particular, the Republic Entities reference phone logs which show phone calls between RMRC and Plaintiffs on various dates. *See* Dkt. No. 45, Declaration of Margaret Ciavarella in Supp. of Def.'s Mot. for Summ. J. ("Ciavarella Decl."), Ex. 11. The Republic Entities also present photocopied entries from Ms. Accurso's "trading ledger," where she kept an internal record of RMRC's anticipated purchases of gold following calls with Yakutilov. *Id.*, Ex. 13. Finally, the Republic Entities cite to various "fix tickets," created by RMC and also kept internally, which memorialized the sale of the expected deliveries from RMRC to RMC. *See e.g.*, *id.*, Ex. 14.

### III. PROCEDURAL HISTORY

Plaintiffs brought claims for breach of contract and breach of the implied duty of good faith and fair dealing against Defendant RMRC on October 15, 2015 in New York State Court for New York County. Dkt. No. 1, Verified Complaint ("Compl."). The case was removed to this Court on November 6, 2015. *See* Dkt. No. 1. On November 13, 2015, Defendant answered the complaint

4

and, along with Counterclaim Plaintiff RMC, brought counterclaims against Plaintiffs for breach of contract and promissory estoppel.

After the close of discovery, on October 14, 2016, Plaintiffs moved for summary judgment on all claims—including the Republic Entities' counterclaims—in their favor. Dkt. No. 40, Mem. in Supp. of Pls.' Mot. for Summ. J. ("Pls.' Mot."). Defendant RMRC moved for summary judgment on Plaintiffs' contract claims, and Counterclaim Plaintiffs moved for summary judgment on their promissory estoppel claim as it related to nineteen of the sixty-five transactions for which Plaintiffs' allegedly failed to deliver gold as promised. Dkt. No. 42, Mem. in Supp. of Def. and Counterclaim Pls.' Mot. for Summ. J. ("Def.'s Mot."). On November 11, 2016, the parties filed their respective oppositions. Dkt. No. 50, Def.'s Opp'n to Pls.' Mot. for Summ. J. ("Def.'s Opp'n"); Dkt. No. 52, Pls.' Opp'n to Def.'s Mot. for Summ. J., ("Pls.' Opp'n"). On December 2, 2016, the parties filed their respective reply briefs. Dkt. No. 56, Pls.' Reply in Supp. of Pls.' Mot. for Summ. J. ("Pls.' Reply"); Dkt. No. 59, Def.'s Reply in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Reply").

On September 29, 2017, the Court denied both motions for summary judgment as they related to Plaintiffs' breach of contract claims. In doing so, the Court held that it could not determine what the terms of the contracts between the parties were on the basis of the record presented to it, and as a result, it could not determine if and when a breach of those terms occurred. This opinion address both parties' motions for summary judgment as they relate to the Republic Entities' counterclaims.

### IV. **LEGAL STANDARD**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))).

The party moving for summary judgment must first demonstrate the absence of any genuine dispute of material fact. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323-24). If the burden of proof at trial would fall on the movant, that party's "own submissions in support of the motion must entitle it to judgment as a matter of law." *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998). If, on the other hand, "the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex Corp.*, 477 U.S. at 322-23).

If the moving party meets its burden, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial'" in order to avoid summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks and citation omitted).

A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* In determining whether there exists a

6

genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (citation omitted).

In resolving cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

## V. DISCUSSION

### A. Breach of Contract

Counterclaim Plaintiffs bring a breach of contract claim against the Viktor Entities, contending that the Viktor Entities breached a series of oral agreements to deliver gold. "To establish a *prima facie* case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank,* 392 F.3d 520, 525 (2d Cir. 2004) (internal citation omitted).

Before the Court can determine whether a breach occurred, it must determine as a "threshold issue" whether these oral contracts are barred as unenforceable by the statute of frauds. *Bazak Int'l Corp. v. Mast Indus., Inc.*, 73 N.Y.2d 113, 118 (1989). Because the agreements between Plaintiffs and Defendant involved the sale of goods, New York's Uniform Commercial Code ("NY

7

UCC") applies to the parties' claims.³ *McNally Wellman Co. v. New York State Elec. & Gas Corp.*, 63 F.3d 1188, 1194 (2d Cir. 1995).

The NY UCC statute of frauds, NY UCC 2–201(1), states:

Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

It is undisputed that there is no signed writing between the parties that would satisfy the statute of frauds. The focus of this case therefore turns on whether the "merchant's exception" to the statute of frauds, NY UCC 2–201(2), applies to the parties' oral agreements. That exception provides that:

Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

Neither party disputes that both are "merchants" within the meaning of UCC 2–104(1), but the parties do dispute whether any writing exists that satisfies this exception.

The adequacy of a writing, for purposes of the statute of frauds, "must be determined from the documents themselves, as a matter of law." *Hilord Chem. Corp. v. Ricoh Elec., Inc.,* 875 F.2d 32, 37 (2d Cir. 1989) (quoting *Bazak,* 73 N.Y.2d at 122). "Parol evidence, even in affidavit form, is immaterial to the threshold issue whether the documents are sufficient on their face to satisfy the Statute of Frauds." *Bazak*, 73 N.Y.2d at 118. To survive summary judgment, a writing need only be "sufficient to indicate that a contract for sale has been made." *Id.* at 122. A confirmatory writing need not explicitly state that its purpose is to confirm an agreement, as long as it "afford[s] a basis for believing that the offered oral evidence rests on a real transaction." *Id.* at 120. As the Court in *Bazak* explained, the "only indispensable term" in such a confirmatory writing is quantity. *Id.* at 119.

---

³ Both parties cite to the NY UCC in their briefs as the controlling body of law. As the Second Circuit has explained, where "[t]he parties' briefs assume" that a certain body of law controls," such implied consent is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000).

Here, Counterclaim Plaintiffs point to no evidence in the record that constitutes a writing "in confirmation of the contract and sufficient against the sender" and that was "received [by a party that] has reason to know its contents." NY UCC 2-201(2). As a result, these oral contracts to deliver gold do not fall under the merchant's exception to the statute of frauds.

In opposing Plaintiffs' motion for summary judgment, the Republic Entities contend that they have produced "ample evidence of agreements between Plaintiffs and Defendant RMRC for the sale of physical gold, [including] purchase orders, phone records and internal trade ledger entries for the transactions." Def.'s Opp'n at 18. Neither the purchase orders, which were made by RMC and merely documented the trades between RMRC and RMC, nor Ms. Accurso's trading ledger, which was created and kept internally by RMRC, were received by Plaintiffs. Furthermore, the phone records alone merely show that phone calls took place between Plaintiffs and Defendant, but those phone records were also not sent to or received by Plaintiffs. Given that these writings were never transmitted to, or received by, Plaintiffs, they cannot satisfy the requirements of NY UCC 2-201(2). Counterclaim Plaintiffs' breach of contract claims are therefore barred by the statute of frauds. Plaintiffs' motion for summary judgment on the Republic Entities' breach of contract claim is granted; Counterclaim Plaintiffs' motion for summary judgment on that claim is denied.

B. Promissory Estoppel

The Republic Entities also move for summary judgment on their promissory estoppel claim as it relates to nineteen of the sixty-five transactions for which the Viktor Entities allegedly failed to deliver gold as promised. Plaintiffs move for summary judgment on the Republic Entities' claim for promissory estoppel as to all sixty-five transactions. Because the Republic Entities fail to assert an unconscionable injury caused by these promises, and such evidence is necessary to overcome the statute of frauds, the Viktor Entities' motion for summary judgment is granted as to the claim for promissory estoppel.

9

Promissory estoppel is an equitable doctrine that can apply in two situations under New York law. First, the doctrine may allow the enforcement of a promise in the absence of bargained-for consideration. *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 824 (2d Cir. 1994). Second, promissory estoppel can be applied to provide relief to a party who relied on a contract that is unenforceable under the statute of frauds. *Id.* The elements of a claim for promissory estoppel are (1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance by the party to whom the promise was made; and (3) an injury to the party to whom the promise was made by reason of the reliance. *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995). When promissory estoppel is employed to overcome the statute of frauds, the doctrine only applies "in those rare cases where the circumstances [are] such as to render it *unconscionable* to deny the oral promise upon which the promisee has relied." *Robins v. Zwirner*, 713 F. Supp. 2d 367, 376-77 (S.D.N.Y. 2010) (emphasis in original) (internal citation and quotation marks omitted). An "unconscionable" injury is one "beyond that which flows naturally (expectation damages) from the non-performance of the unenforceable contract." *Merex A.G.*, 29 F.3d at 826.

The Republic Entities contend that their promissory estoppel claim is one that seeks the enforcement of a promise in the absence of consideration, and that as such they need not make a showing of unconscionable injury. Def.'s Reply at 9. However, the New York Court of Appeals recently explained that a party seeking to enforce a promise that must be reduced to a writing is "obliged to bring [the] case within an exception to the statute of frauds." *In re Estate of Hennel*, 29 N.Y.3d 487, 493 (2017). In *Estate of Hennel*, the court affirmed the Appellate Division's holding that a party seeking to enforce a testamentary provision was required to bring its promissory estoppel claim as an exception to the statute of frauds because, in that instance, New York Estates, Powers and Trusts Law and New York General Obligations Law held that such provisions must be in writing. *See id.*

Here, as explained above, the Viktor Entities' promises to deliver gold are subject to the NY UCC's statute of frauds. Thus the doctrine of promissory estoppel may only be invoked here as a means of overcoming the statute of frauds. *Merex A.G.*, 29 F.3d at 824 (2d Cir. 1994). As a result, the Republic Entities are required to show an unconscionable injury to satisfy the requirements of promissory estoppel as a matter of law. *Id.*; *see also In re Hennel*, 29 N.Y.3d at 495 ("The strongly held public policy reflected in New York's Statute of Frauds would be severely undermined if a party could be estopped from asserting it every time a court found that some unfairness would otherwise result. For this reason, the doctrine of promissory estoppel is properly reserved for that limited class of cases where the circumstances are such as to render it unconscionable to deny the promise upon which the plaintiff has relied.") (quoting *Philo Smith & Co. v. USLIFE Corp.*, 554 F.2d 34, 36 (2d Cir. 1977) (internal citation marks omitted).

The Republic Entities assert that they have made a showing of an unconscionable injury because, in order to satisfy their obligations to third-party purchasers, and as a result of relying on the Viktor Entities' promises to deliver gold, they were required to purchase gold at prices that "substantially exceeded" the price it would have paid the Viktor Entities. Def.'s Reply at 9 n.4. However, even if the costs incurred were exceptionally high, a cover price is an injury that "flows naturally . . . from the non-performance of the unenforceable agreement" and thus is not unconscionable. *Merex,* 29 F.3d at 826. "[I]n the absence of 'egregious' circumstances, courts have consistently rejected promissory estoppel claims when the alleged injuries consisted of lost profits, lost fees, forgone business opportunities or damage to business reputation." *Mobile Data Shred, Inc. v. United Bank of Switz.,* No. 99-cv-10315, 2000 WL 351516, at *4 (S.D.N.Y. Apr. 5, 2000) (citation omitted); *see also N. Am. Knitting Mills, Inc. v. Int'l Women's Apparel, Inc.*, No. 99-cv-4643, 2000 WL 1290608, at *3 (S.D.N.Y. Sept. 12, 2000) (finding no unconscionable injury where plaintiff alleged it "incurred substantial expenses" and "lost other substantial clients"); *River Glen Assocs., Ltd. v. Merrill*

*Lynch Credit Corp.*, 743 N.Y.S.2d 870, 871 (1st Dep't 2002) (holding that a "plaintiff's claimed additional financing and other costs do not constitute an unconscionable injury warranting the application of promissory estoppel"). There are no egregious circumstances here. While the Republic Entities may be frustrated by their inability to enforce their oral agreements, "what is unfair is not always unconscionable." *In re Hennel*, 29 N.Y.3d at 497. Because Counterclaim Plaintiffs have not shown that they suffered an unconscionable injury, they may not invoke promissory estoppel to overcome the NY UCC's statute of frauds, and as a result, their claim for promissory estoppel fails as a matter of law. Plaintiffs' motion for summary judgment is granted as to Counterclaim Plaintiffs' claim for promissory estoppel, and Counterclaim Plaintiffs' motion for summary judgment as to that claim is denied.

## VI. CONCLUSION

For the reasons stated above, Plaintiffs' motion for summary judgment is GRANTED in part. Counterclaim Plaintiffs' motion for summary judgment is DENIED.

SO ORDERED.

Dated: October 5, 2017
New York, New York

GREGORY H. WOODS
United States District Judge